IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**PHILLIP CAMPBELL-GRAVES,**

        Plaintiff,

v.                                                                  No. CIV-14-0051 LAM

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

        Defendant.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 18)*, filed October 16, 2014 (hereinafter "motion"). On January 13, 2015, Defendant filed a response to the motion [*Doc. 21*], and, on January 27, 2015, Plaintiff filed a reply [*Doc. 22*]. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. [*Docs. 4* and *7*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 14*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.

## I.  Procedural History

On October 1, 2010, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB") alleging that he became disabled on January 1, 2007.  [*Doc. 14-7* at 2-3]. Plaintiff states that he became disabled due to: poor vision, chest pains, back problems, and loss of breath.  [*Doc. 14-8* at 6].  The application was denied at the initial level on February 23, 2011 (*see Doc. 14-5* at 2-5), and was denied at the reconsideration level on October 6, 2011 (*Doc. 14-2* at 1 and *Doc. 14-5* at 9-11).  Pursuant to Plaintiff's request (*Doc. 14-5* at 12-13), Administrative Law Judge J. Dell Gordon (hereinafter "ALJ") conducted a hearing on October 9, 2012. [*Doc. 14-3* at 26-56].  At the hearing, Plaintiff appeared via video conference, was represented by an attorney, and testified.  *Id.* at 28, 33-49, 50-51.  In addition, Vocational Expert (hereinafter "VE"), Leslie White, was present and testified.  *Id.* at 28, 49-54.

On December 28, 2012, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 14-3* at 12-25].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 8), and, on November 13, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 2-7), which made the ALJ's decision the final decision of the Commissioner.  On January 15, 2014, Plaintiff filed his complaint in this case.  [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's

2

decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on November 10, 1950. [*Doc. 14-7* at 2]. Plaintiff has held the following jobs: manager, researcher and writer. [*Doc. 14-8* at 7]. Plaintiff stated that he became disabled due to: poor vision, chest pains, back problems, and loss of breath. *Id.* at 6. Plaintiff's medical records include: a Disability Determination Explanation (*Doc. 14-4* at 5-14); a Case Analysis by David P. Green, M.D., dated February 21, 2011 (*Doc. 14-12* at 18); a Psychiatric Review Technique by Elizabeth Chiang, M.D., dated February 22, 2011 (*id.* at 19-32); a Mental Residual Functional Capacity Questionnaire by Michael Hill, LISW, dated August 1, 2011 (*id.* at 48-54); a Disability Determination Examination by W. Murray Ryan, M.D., dated September 27, 2011 (*Doc. 14-13* at 3-5); and various consultation and treatment notes and reports

(*Doc. 14-10* at 9-10; *Doc. 14-12* at 3-5, 56-57; and *Doc. 14-13* at 10).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity since Plaintiff's alleged disability onset date of September 15, 2006 through his date last insured of December 31, 2011.   [*Doc. 14-3* at 14].[1]   At step two, the ALJ found that Plaintiff has the following severe impairments: gastroesophageal reflux disease, hypertension, dyspnea on exertion, chest pain secondary to reflux, and a back disorder.   *Id.*   At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).   *Id.* at 16.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels.   *Id.* at 17.   In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."   *Id.* at 18.   The ALJ gave great weight to the opinion of consultative examiner, Dr. Ryan, that Plaintiff's physical exam was normal, stating that the opinion "is consistent with the limited objective medical evidence during the period at issue and with [Plaintiff's RFC]."   *Id.* at 18-19.   The ALJ gave little weight to Dr. Rajan Mirchandani's opinion that Plaintiff needs to get up and walk around every four hours to stretch his back, stating that the opinion "is inconsistent with [Plaintiff's] x-rays and treatment notes."   *Id.*   At step four, the ALJ found that Plaintiff was

---

[1] Plaintiff states in his application for DIB that he became unable to work on January 1, 2007 because of his disabling condition; however, in his Disability Report, Plaintiff states that he stopped working on September 15, 2006 due to his disabling condition.   *Compare* [*Doc. 14-7* at 2] *with* [*Doc. 14-8* at 6].   The Court finds that this discrepancy in Plaintiff's alleged onset date does not affect the Court's decision, but the Court asks Plaintiff, upon remand of his case, to clarify in writing to Defendant which date is his correct alleged onset date.

capable of performing his past relevant work as a manager in finance. *Id.* The ALJ further found that, although Plaintiff is capable of performing his past relevant work, there are other jobs in the national economy he is capable of performing, so the ALJ proceeded to the fifth step to make alternative findings. *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on November 10, 1950, and was 61 years old on the date last insured, which is defined as an individual of advanced age. *Id.* The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. *Id.* The ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills." *Id.* at 19-20 (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2). The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 20. The ALJ stated that he asked the VE "whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as telephone quotation clerk and a number of manager jobs. *Id.* The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to other work that exist[s] in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.   Analysis

In his motion to reverse or remand, Plaintiff contends that the ALJ erred in his RFC assessment by: (1) failing to properly consider the evidence relating to Plaintiff's mental limitations (*Doc. 18* at 8-14); (2) failing to properly consider the evidence regarding Plaintiff's physical limitations (*id.* at 14-18); and (3) failing to properly assess Plaintiff's credibility (*id.* at 18-19).  Plaintiff also contends that the ALJ erred in his findings regarding Plaintiff's past relevant work (*id.* at 19-21), and in his alternate findings regarding Plaintiff's ability to perform other work (*id.* at 21-22).  In response, Defendant contends that the ALJ did not err in his RFC assessment or in his findings regarding Plaintiff's past relevant work.  [*Doc. 21* at 10-19].

### A.   The ALJ's RFC Determination

#### *1.  Mental Limitations*

Plaintiff first contends that the ALJ erred in his RFC determination by failing to properly consider the limiting effects of Plaintiff's mental impairments.  [*Doc. 18* at 8-14].  Specifically, Plaintiff contends that the ALJ erred by giving little weight to the opinions of social worker Michael Hill, and by failing to consider the opinions of state agency consultant Dr. Dinwoodie. *Id.*  In response, Defendant contends that the ALJ properly considered and rejected Mr. Hill's opinions (*Doc. 21* at 14-16), and that the ALJ did not err in failing to consider Dr. Dinwoodie's opinions because those opinions did not require the ALJ to impose any non-exertional restrictions in his RFC determination (*id.* at 16).

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 404.1545(a)(1); *see also* Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations.").  The ALJ must base the RFC assessment

on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any.  Soc. Sec. Rep. 96-8p at *5.  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id.* at *7.  The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions.  *Id.*  Because the ALJ must consider the whole record, he is prohibited from "pick[ing] and choos[ing] among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted).  When there are multiple opinions regarding medical severity and functional ability from different sources, the ALJ must explain the weight given to each source's opinions.  *Hamlin*, 365 F.3d at 1215 (citation omitted).

Mr. Hill found that Plaintiff has marked impairments in: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual; working in coordination with or in proximity to others; making simple work-related decisions; interacting appropriately with the public and co-workers; and the ability to travel or use public transportation due to panic attacks.  *See* [*Doc. 14-12* at 52-54].  Mr. Hill further found that Plaintiff has moderate impairments in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and in performing at a consistent pace without an unreasonable number and length of rest periods.  *Id.*

8

at 53.  The ALJ did not address Mr. Hill's opinions in his step-four findings, and these limitations are not accounted for in the ALJ's determination that Plaintiff has the RFC to perform a full range of work at all exertional levels.  *See* [*Doc. 14-3* at 17-19].  Defendant contends that the ALJ properly considered Mr. Hill's opinions in the ALJ's step-two findings regarding Plaintiff's severe impairments by explaining that the ALJ gave the opinions little weight because they contradict the medical evidence and Mr. Hill is not an acceptable medical source.  *See* [*Doc. 21* at 14-15] (citing *Doc. 14-3* at 16).[2]  However, as explained in Soc. Sec. Rep. 96-8p, there is a difference between evaluating the severity of mental limitations at steps two and three of the sequential evaluation process based on the broad functional areas identified in the psychiatric review technique, and in assessing mental limitations in the RFC assessment at step four.  *See* Soc. Sec. Rep. 96-8p at *4 (explaining that "the [ALJ] must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process," and that "[t]he mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four functional areas of the psychiatric review technique).  Thus, the ALJ's consideration of Mr. Hill's findings of mental limitations at step two does not suffice as consideration of his findings at step four, and the Court finds that the ALJ erred in failing to address Mr. Hill's findings of marked and moderate limitations.  *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that an ALJ must explain why even moderate limitations are rejected when they conflict with the ALJ's RFC assessment); *see also* Soc. Sec. Rep. 96-8p at *7 ("The RFC assessment must always

---

[2] While the ALJ refers to the opinions of "Michelle Hill" in this portion of his opinion, the ALJ cites to Michael Hill's Mental RFC Questionnaire, which includes the name of Plaintiff's previous counsel "Michelle Baca," so this appears to be a typographical error.  *See* [*Doc. 14-3* at 16] and [*Doc. 14-12* at 48].

consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted."). The Court, therefore, instructs the ALJ that, on remand, the ALJ shall either incorporate Mr. Hill's findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

State agency consultant Dr. Dinwoodie opined that Plaintiff has moderate limitations in: the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public. [*Doc. 14-4* at 12]. The ALJ did not address these opinions, and these limitations are not accounted for in the ALJ's RFC determination. The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(2)(i). While Defendant contends that the ALJ did not err in failing to consider Dr. Dinwoodie's opinions because those opinions did not require the ALJ to impose any non-exertional restrictions in his RFC determination (*see Doc. 21* at 16), this is an impermissible *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted). The Court, therefore, finds that the ALJ erred by failing to consider Dr. Dinwoodie's opinions and the Court instructs the ALJ that, on remand, the ALJ shall

either incorporate Dr. Dinwoodie's findings into Plaintiff's RFC assessment, or sufficiently explain why they are rejected.

### 2. *Physical Limitations*

Next, Plaintiff contends that the ALJ erred by failing to properly consider evidence relating to his physical limitations. [*Doc. 18* at 14-18]. Specifically, Plaintiff contends that the ALJ erred by giving little weight to Dr. Mirchandani's opinion that Plaintiff has to get up and walk around every 4 hours to stretch his back, and by giving Dr. Ryan's opinion great weight because Dr. Ryan did not have Plaintiff's medical records, so his opinion was unsupported. *Id.* at 16-17. In response, Defendant contends that the ALJ properly considered each of these opinions. [*Doc. 21* at 10-13].

With regard to Dr. Mirchandani's opinion that Plaintiff needs to get up and walk around every 4 hours to stretch his back (*see Doc. 14-12* at 4), the ALJ stated that he gave this opinion little weight "because it is inconsistent with [Plaintiff's] x-rays and treatment notes" (*Doc. 14-3* at 19, citing *Doc. 14-10* at 9, *Doc. 14-12* at 5, 56, 57, and *Doc. 14-13* at 10). While Plaintiff contends that the ALJ failed to explain why Dr. Mirchandani's opinion was not supported by the evidence in the record (*see Doc. 18* at 16), the Court disagrees because the ALJ explained that an x-ray of Plaintiff's thoracic spine showed that there were no compression fractures, treatment notes indicated that Plaintiff's gait was normal, had normal muscle strength and tone in all four extremities with no cyanosis or clubbing, and that Plaintiff's musculoskeletal examination showed that Plaintiff had normal range of motion (*see Doc. 14-3* at 18, citing *Doc. 14-12* at 56, *Doc. 14-10* at 9, *Doc. 14-13* at 10 and *Doc. 14-12* at 5). Therefore, the Court finds that the ALJ sufficiently supported his decision to discount Dr. Mirchandani's opinion by discussing the inconsistencies between the opinion and the evidence in the record. Plaintiff's contention that the ALJ's

assessment of Dr. Mirchandani's opinion is incorrect invites the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, which the Court cannot do. *See Hamlin*, 365 F.3d at 1214. The Court, therefore, finds that this claim should be denied.

With regard to Dr. Ryan's opinions, the ALJ stated that he gave great weight to Dr. Ryan's opinion regarding Plaintiff's physical examination because it is consistent with the medical evidence and with the ALJ's RFC determination. [*Doc. 14-3* at 18-19]. Plaintiff contends that, because Dr. Ryan did not have Plaintiff's medical records or the x-ray showing moderately significant osteoarthritis in front of him, it was improper for the ALJ to give this opinion great weight. [*Doc. 18* at 17]. The Court finds no error in the ALJ's consideration of Dr. Ryan's opinion regarding Plaintiffs' physical examination because the ALJ considered the opinion and explained why he gave it great weight, and, importantly, the ALJ considered Plaintiff's medical records and x-rays in making his determination to give great weight to Dr. Ryan's opinion on Plaintiff's physical examination. However, the Court finds that the ALJ erred by failing to consider Dr. Ryan's opinion that Plaintiff "probably does have major psychiatric problems and it may be appropriate to get a psychiatric evaluation." [*Doc. 14-13* at 5]. The ALJ's failure to explain why he chose to rely on some findings by Dr. Ryan and not on others is legal error. *See* Soc. Sec. Rep. 96-8p at *7 (The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"); *see also Carpenter*, 537 F.3d at 1265 (An ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). Therefore, the Court finds that the ALJ erred in his consideration of Dr. Ryan's opinions and, on remand, shall consider his opinions in accordance with Soc. Sec. Rep. 96-8p.

### B.  Plaintiff's Remaining Claims

Because the Court finds that Plaintiff's case should be remanded for further consideration of the opinions of Mr. Hill, Dr. Dinwoodie, and Dr. Ryan, the Court finds that it is unnecessary to reach Plaintiff's remaining claims that the ALJ failed to properly assess Plaintiff's credibility and erred in his findings regarding Plaintiff's past relevant work and Plaintiff's ability to perform other work.  *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Mr. Hill, Dr. Dinwoodie, and Dr. Ryan, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's ***Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum*** *(Doc. 18)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**